IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WASHINGTON DEVELOPMENT          )
COMPANY, INC., a Montana        )
corporation,                    )
                                )
                Plaintiff,      )    Civil No. 06-676-JE
                                )
        v.                      )    OPINION AND ORDER
                                )
M/V PAC RIM EXPRESS, her        )
engines, tackle and equipment,  )
and TUG MASTER, INC., a         )
Washington corporation,         )
                                )
                Defendants.     )
_____ )


        Michael E. Haglund
        Michael K. Kelley
        Julie A. Weis
        Haglund Kelley Horngren Jones & Wilder LLP
        101 S.W. Main Street, Suite 1800
        Portland, OR 97204-3226

        Attorneys for Plaintiff


1 - OPINION AND ORDER

Charles J. Paternoster
Markowitz, Herbold, Glade & Mehlhaf, P.C.
1211 S.W. Fifth Avenue, Suite 3000
Portland, OR 97204

Terence K. McGee
1000 Second Avenue, Suite 2450
Seattle, WA 98104

        Attorneys for Defendant

JELDERKS, Magistrate Judge:

    Plaintiff Washington Development Company, Inc. (WDC)
brings this admiralty action against defendants M/V Pac Rim
Express (Pac Rim) and Pac Rim's owner Tug Master, Inc. (Tug
Master).  Defendant Tug Master moves for summary judgment,
and Plaintiff WDC moves for leave to file a second amended
complaint.  For the reasons set out below, I grant WDC's
motion for leave to amend, and deny defendant Tug Master's
motion for summary judgment is denied as moot.


                    **FACTUAL BACKGROUND**

    Plaintiff WDC, a Montana corporation, owns and operates
a marine terminal on the Columbia River at Tongue Point.
Defendant Tug Master, a Washington corporation, owns and
operates the Pac Rim, a barge.

    Pacific Coast Barge Builders, Inc. (Barge Builders), an
Oregon corporation, was formed on January 31, 2005, and was
dissolved on March 24, 2006.  Beginning on February 10, 2005,
plaintiff WDC leased portions of the Tongue Point marine
terminal to Barge Builders.

2 - OPINION AND ORDER

According to the declaration of Fred Dahl, Jr., President of defendant Tug Master, Tug Master purchased the Pac Rim in the fall of 2004 with the intention of converting it from an oil tank barge to a deck cargo barge.  Dahl states that, in February 2005, defendant Tug Master and Barge Builders verbally agreed that Barge Builders would do the conversion work in space at the Tongue Point marine terminal that Barge Builders leased from plaintiff WDC.

Defendant Tug Master delivered the Pac Rim to Barge Builders at the Tongue Point marine terminal, and Barge Builders began working on the barge there on February 10, 2005.  The Pac Rim remained at the Tongue Point marine terminal until May 12, 2006, when the barge was arrested by the United States Marshal pursuant to process issued in this action.

Defendant Tug Master did not have any contractual relationship with plaintiff WDC, and did not enter into any lease agreement under which plaintiff agreed to provide services to the Pac Rim.  Defendant Tug Master did not enter into any written or verbal agreement with plaintiff WDC.

Defendant Tug Master directly paid plaintiff WDC moorage fees in the amount of $3,325 per month and rental fees for a fire meter and fire monitor in the amount $200 per month for the Pac Rim in October, November, and December, 2005.  According to Dahl's declaration, Barge Builders was obligated to make these payments, and defendant Tug Master made the

payments "in order to ensure uninterrupted completion of the barge's conversion." Dec. of Dahl, Jr. at 2. Dahl adds that, after defendant Tug Master made these payments, plaintiff WDC began invoicing Tug Master directly for all amounts that Barge Builders owed WDC. Id. Kelley Roth, president of a company that Tug Master hired as its representative during the final months of the barge conversion, has submitted a declaration stating that Barge Builders "lost its ability to pay its suppliers and vendors" as the barge conversion neared completion, and that defendant Tug Master paid the moorage charges to plaintiff WDC "in order to ensure uninterrupted completion of the barge's conversion." Dec. of Roth at 2-3.

### FIRST AMENDED AND PROPOSED SECOND AMENDED COMPLAINTS

In its first amended complaint, plaintiff WDC alleges that defendant Tug Master

> entered into a lease agreement under which plaintiff
> agreed to provide services to the defendant vessel
> consisting of dockage, utilities and other services.
> The agreed, fair and reasonable value of the
> services and supplies totals $39,335.70.

The first amended complaint further alleges that none of this amount has been paid, and that "the lease agreement between plaintiff and defendants M/V Pac Rim Express and Tug Master, Inc. provides that in the event of litigation to enforce the lease, plaintiff is entitled to its reasonable attorney's fees."

4 - OPINION AND ORDER

In its pending motion for summary judgment, defendant Tug Master argues that it is not liable for any of the damages plaintiff WDC is seeking because it never entered into any lease agreement under which plaintiff WDC agreed to provide services to the Pac Rim.  Defendant Tug Master further asserts that it "never entered into any agreement, written or verbal, with Washington Development Company."

After defendant Tug Master filed its motion for summary judgment, plaintiff moved for leave to file a second amended complaint.  In that proposed amended complaint, plaintiff omits the allegation that Tug Master entered into a lease agreement with it, and drops Tug Master altogether as a defendant.  The second amended complaint names only the Pac Rim and "her engines, tackle and equipment" as a defendant, and seeks recovery from the barge on the basis that "moorage, warehouse, office and outside storage space" provided for the barge at the terminal "for the purpose of facilitating her repairs constitute necessaries within the meaning of the Maritime Lien Act, 46 U.S.C. § 31342."  The second amended complaint also reduces the amount of the damages sought to $34,665, which is alleged to be the "reasonable value of the necessaries provided by plaintiff to defendant," and omits the claim for attorney fees set out in the first amended complaint.

## DISCUSSION

### 1. Motion for leave to file second amended complaint

Plaintiff WDC filed its original complaint on May 10, 2006, and filed its first amended complaint on May 26, 2006. The only claim in the first amended complaint alleges that defendant Tug Master owes $39,335.70 to plaintiff under a lease agreement requiring WDC to provide dockage, utilities, and other services to the Pac Rim.

A Discovery and Pretrial Scheduling Order entered on May 10, 2006, provided that discovery would close on September 7, 2006, and required all motions to amend the pleadings to be filed by that date. The parties subsequently stipulated that these deadlines would be extended to December 15, 2006, and an Order revising the deadlines was entered on October 20, 2006.

During a Rule 16 conference held on October 30, 2006, defendants' counsel indicated that Tug Master would file a motion for summary judgment. In an Order filed on November 1, 2006, the court set the deadline for filing dispositive motions as December 15, 2006, and required that responses to dispositive motions be filed by January 16, 2007. In the same Order, the court scheduled a one-day court trial for April 2, 2007.

On December 13, 2006, in a response to defendant Tug Master's request for Admissions, plaintiff WDC stated that Tug Master and plaintiff had never entered into a lease agreement

or any other agreement under which plaintiff was to provide
services to defendant Pac Rim.

On January 17, 2007, plaintiff WDC filed its pending
motion seeking leave to file a second amended complaint.  As
noted above, the proposed second amended complaint omits Tug
Master as a defendant, and seeks recovery instead only from
defendant Pac Rim, on the grounds that the moorage and other
space provided for the barge are "necessaries" within the
meaning of the Maritime Lien Act.

As defendant Tug Master correctly notes, though Fed. R.
Civ. P. 15(a) provides that leave to amend "shall be freely
given when justice so requires," after an answer has been
filed, Rule 16(b) provides that after a scheduling order has
been entered limiting the time for amendment and discovery,
that schedule can be modified only "upon a showing of good
cause . . . ."

Defendant Tug Master contends that plaintiff cannot show
"good cause" for allowing the amendment to the complaint after
its pending motion for summary judgment was filed, and asserts
that, because it is the claimant of the barge, permitting this
late amendment would be "severely prejudicial."  Defendant
Tug Master notes that discovery has closed and a trial is set
for April 2, 2007, which is only a few weeks after the court
has taken the pending motion for summary judgment under
advisement.  It asserts that, if the filing of a second
amended complaint is allowed, it "will be severely prejudiced

unless the pretrial and trial schedules are again revised to permit discovery - including the alleged use of upland leased space for the benefit of the barge and the market value of the claimed lien services to the vessel - and motion practice on Washington Development's new maritime lien claim."  Defendant Tug Master also contends that the proposed amendment should be denied as futile because plaintiff alleges only that "necessaries" were provided to the Pac Rim pursuant to the general contractor's representations, and a general contractor is not a "person authorized by the owner" to procure services for a vessel under 46 U.S.C. § 31342 "unless the general contractor acts as the vessel owner's agent in engaging subcontractors specified by the vessel owner. . . . "

In addition to these issues, defendant Tug Master argues that plaintiff WDC should not be allowed to dismiss its *in personam* claims against it while its motion for summary judgment on those claims is pending.  In support of this argument, Tug Master notes that Rule 41(a)(1) allows a plaintiff to dismiss an action without leave of the court only if no answer has been filed, and that, after an answer is filed, an action may only be dismissed "upon order of the court and upon such terms and conditions as the court deems proper. . . ." Fed. R. Civ. P. 41(a)(2).

I agree that it would have been preferable for plaintiff to seek leave to file an amended complaint sooner.  As the operator of the facility that provided moorage and other

8 - OPINION AND ORDER

services for the Pac Rim during the conversion, it appears
that plaintiff should have been able to easily determine
whether it had any contractual relationship with defendant
Tug Master.  It also appears that, before discovery closed and
the pending motion for summary judgment was filed, plaintiff
could have either included the *in rem* claim for "necessaries"
against the vessel in an earlier complaint, or sought leave to
add such a claim and omit the contractual claim against
defendant Tug Master.

Nevertheless, I conclude that plaintiff's motion for
leave to amend should be granted.  Here, the amount in
controversy is very modest, and plaintiff's assertion that it
has sought to prosecute the action without requiring the
parties to incur significant expense appears to be accurate.
Plaintiff has taken no depositions, and has propounded no
discovery requests.  During the Rule 16 conference, defendants
indicated their intention to file a motion for summary
judgment without engaging in significant discovery, and all
parties agreed that no pretrial order would be needed.

Given the unusually modest amount in controversy, the
parties' endeavors to limit discovery and litigation costs to
this point, and the apparently straightforward issues that
this litigation presents, I conclude that the "good cause"
requirement of Rule 16(a) is satisfied, and that defendants
will not be unfairly prejudiced by amendment of the complaint
at this point.  It does not appear that the claim set out in

the proposed second amended complaint will require defendant
to engage in significant factual investigation or require
extensive legal analysis.  The court is prepared to reopen
discovery, if more information is needed in order to explore
the factual basis of the claim in the second amended
complaint, and will work with the parties to reschedule the
brief trial that has been set.


2. Defendants' motion for summary judgment


    a. Standards

    Federal Rule of Civil Procedure 56(c) authorizes summary
judgment if no genuine issue exists regarding any material
fact and the moving party is entitled to judgment as a matter
of law.  The moving party must show the absence of an issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325
(1986).  The moving party may discharge this burden by showing
that there is an absence of evidence to support the nonmoving
party's case.  Id.  When the moving party shows the absence of
an issue of material fact, the nonmoving party must go beyond
the pleadings and show that there is a genuine issue for
trial.  Id. at 324.

    The substantive law governing a claim or defense
determines whether a fact is material.  T.W. Elec. Serv., Inc.
v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th
Cir. 1987).  Reasonable doubts concerning the existence of a

factual issue should be resolved against the moving party. Id. at 630-31.  The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985).  No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

   b. Discussion

   As noted above, plaintiff's first amended complaint asserts that defendant Tug Master is liable because it

      entered into a lease agreement under which plaintiff
      agreed to provide services to the defendant vessel
      consisting of dockage, utilities and other services.
      The agreed, fair and reasonable value of the
      services and supplies totals $39,335.70.

   Plaintiff now acknowledges that it did not have a contractual relationship with defendant Tug Master, and the record before the court includes no evidence supporting the existence of such an agreement.  Under these circumstances, if plaintiff's first amended complaint were not superseded by the second amended complaint, defendant Tug Master would clearly be entitled to summary judgment.  However, though its motion for summary judgment technically was directed only at plaintiff's first amended complaint, in its memoranda in support of the motion for summary judgment and in its memorandum in opposition to plaintiff's motion for leave to

11 - OPINION AND ORDER

amend, defendant Tug Master argues that, if an *in rem* claim against Pac Rim were allowed, it would fail because Barge Builders was not among the "persons presumed to be authorized to procure repairs, supplies, and necessaries" under 46 U.S.C. § 31341(a).  In the alternative, defendant Tug Master contends that it is entitled to dismissal of all claims for damages except a claim for the moorage charges for the barge incurred in 2006, "after Pacific Coast Barge Builders was gone and Tug Master was dealing directly with Washington Development for the moorage charges then accruing."  Def. Reply in support of motion for summary judgment at 5.

Defendant Tug Master is correct in asserting that there is no evidence before the court that Barge Builders was acting as anything other than an independent contractor, or that Tug Master intended that plaintiff WDC be engaged as a subcontractor that would supply terminal facilities.  However, issues concerning Barge Builder's authority, Tug Master's intention or lack of intention that plaintiff be engaged as a subcontractor, and as to which particular services provided might qualify as "necessaries" within the meaning of § 31341 have not been explored, because they were not relevant until plaintiff filed its second amended complaint.  Nothing before the court at this stage in the proceedings indicates that the parties have explored these issues through discovery, and it would be premature for the court to address them at this time.

12 - OPINION AND ORDER

My decision to grant plaintiff WDC's motion for leave to file a second amended complaint renders Tug Master's motion for summary judgment moot, except as to Tug Master's arguments concerning the viability of the claim set out in the proposed second amended complaint. Because the record before the court does not include evidence concerning issues raised by the second amended complaint, and the parties have not had the opportunity to fully address those issues, Tug Master's motion for summary judgment is denied as moot.

## CONCLUSION

Plaintiff's motion for leave to file a second amended complaint (#36) is GRANTED. Defendant Tug Master's motion for summary judgment (#26) is DENIED as moot.

DATED this 21st day March, 2007.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge

13 - OPINION AND ORDER