IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WASHINGTON DEVELOPMENT )
COMPANY, INC., a Montana )
corporation, )
                      )
            Plaintiff, )    Civil No. 06-676-JE
                      )
          v. )    OPINION AND ORDER
                      )
M/V PAC RIM EXPRESS, her )
engines, tackle and equipment, )
and TUG MASTER, INC., a )
Washington corporation, )
                      )
         Defendants. )
_____)

      Michael E. Haglund
      Michael K. Kelley
      Julie A. Weis
      Haglund Kelley Horngren Jones & Wilder LLP
      101 S.W. Main Street, Suite 1800
      Portland, OR 97204-3226

          Attorneys for Plaintiff

Charles J. Paternoster
Markowitz, Herbold, Glade & Mehlhaf, P.C.
1211 S.W. Fifth Avenue, Suite 3000
Portland, OR 97204

Terence K. McGee
1000 Second Avenue, Suite 2450
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Washington Development Company, Inc. (WDC) brings this admiralty action against defendant M/V Pac Rim Express (Pac Rim) to recover lease and custodial expenses allegedly provided as "necessaries" to that vessel.  Defendant Pac Rim moves for summary judgment.  For the reasons set out below, that motion is granted.

## FACTUAL BACKGROUND

Plaintiff WDC, a Montana corporation, owns and operates a marine terminal at Tongue Point on the Columbia River.

Pacific Coast Barge Builders, Inc. (Barge Builders) was formed on January 31, 2005, to construct, refit, and repair barges.

Tug Master, a former defendant not named in plaintiff's operative second amended complaint, purchased defendant Pac Rim in the fall of 2004 with the intention of converting it from an oil tank barge to a deck cargo barge.  In February 2005, Tug Master and Barge Builders agreed that Barge Builders would do the conversion work on the Pac Rim in space at the

2 - OPINION AND ORDER

Tongue Point marine terminal that Barge Builders leased from
plaintiff WDC.

Beginning on February 10, 2005, plaintiff WDC leased
portions of the Tongue Point marine terminal to Barge
Builders.  Dennis Thompson, the president of Barge Builders,
was the only representative of Barge Builders involved in the
lease negotiations.  Jennifer Poulsen, facility manager of
WDC's Tongue Point marine terminal, was the only
representative of WDC involved in those negotiations.
Thompson asserts that he informed Poulsen that Tug Master
owned defendant Pac Rim.  Poulsen disputes this assertion, and
asserts that Thompson represented that Barge Builders owned
the Pac Rim.

Tug Master delivered the Pac Rim to Barge Builders at the
Tongue Point marine terminal, and Barge Builders began working
on the barge there on February 10, 2005.  Poulsen presented
Thompson a written lease agreement after Barge Builders had
begun working on the Pacific Rim.  Thompson signed the lease
agreement as Barge Builders' president.  The Pac Rim remained
at the Tongue Point marine terminal until May 12, 2006, when
the barge was arrested by the United States Marshal pursuant
to process issued in this action.

Tug Master did not have any contractual relationship with
plaintiff WDC, and did not enter into any lease agreement
under which plaintiff agreed to provide services to the Pac

Rim.   Tug Master did not enter into any written or verbal agreement with plaintiff WDC.

From October through December, 2005, Tug Master directly paid plaintiff WDC moorage fees for the Pac Rim in the amount of $3,325 per month and rental fees in the amount of $200 per month for a fire meter and fire monitor.  According to the declaration of Fred Dahl, Jr., Tug Master's president, Tug Master made these payments, for which Barge Builders was obligated, "in order to ensure uninterrupted completion of the barge's conversion."  Dahl adds that, after Tug Master made these payments, plaintiff WDC began invoicing Tug Master directly for amounts that Barge Builders owed pursuant to the lease.

Barge Builders worked on the Pac Rim as an independent contractor.  Barge Builders and Tug Master had no financial interest in each other, and had no control over each other. Tug Master did not authorize Barge Builder to procure goods or services for the Pac Rim's account, and did not authorize Barge Builders to incur liens on the Pac Rim.


### PLAINTIFF'S CLAIM

Plaintiff alleges that Barge Builders "represented itself as the owner of the BARGE PAC RIM EXPRESS and entered into a lease with plaintiff for the purpose of repairing and renovating the barge."  Plaintiff further alleges that it provided moorage, warehouse, office, and outside storage space

to the Pac Rim, "all for the purpose of supporting the repair and renovation of the vessel," pursuant to Barge Builders' representation that it owned the Pac Rim.

Plaintiff alleges that the moorage and other space it provided for the Pac Rim "constitute necessaries within the meaning of the Maritime Lien Act, 46 U.S.C. § 31342." It adds that the reasonable value of "the necessaries" it provided is $34,665. Plaintiff also alleges that it is entitled to recover $100 per day in "custodian fees" for a total of 41 days that the Pac Rim was in its custody after the vessel was arrested by the U.S. Marshal.

### STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc.

v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th
Cir. 1987).   Reasonable doubts concerning the existence of a
factual issue should be resolved against the moving party.
Id. at 630-31.   The evidence of the nonmoving party is to be
believed, and all justifiable inferences are to be drawn in
the nonmoving party's favor.   Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255 (1985).   No genuine issue for trial exists,
however, where the record as a whole could not lead the trier
of fact to find for the nonmoving party.   Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff here attempts to enforce a maritime lien on
defendant Pac Rim pursuant to 42 U.S.C. § 31342, to recover
moorage fees and rents that accrued while the barge was
located at plaintiff's facility.   That section states that a
person who provides "necessaries" to a vessel "on the order of
the owner or a person authorized by the owner" has a lien on
the vessel.

Plaintiff contends that the moorage and other space that
it provided are "necessaries" within the meaning of § 31342,
and that the Pac Rim is liable for these costs because Barge
Builders represented that it was the owner of the Pac Rim.

Under § 31341(a), the following persons are "presumed to
have authority to procure necessaries for a vessel:

(1) the owner;

6 - OPINION AND ORDER

(2) the master;

(3) a person entrusted with the management of the
vessel at the port of supply; or

(4) an officer or agent appointed by --
    (A) the owner;
    (B) a charterer;
    (C) an owner pro hac vice; or
    (D) an agreed buyer in possession of the
    vessel."

Defendant contends that it is entitled to summary
judgment because plaintiff cannot establish that Barge
Builders qualifies as a "person" presumed to have authority to
procure necessaries for the Pac Rim.  I agree.  Barge Builders
was not the owner or master of the Pac Rim, but instead only
agreed to perform specified work on the vessel as an
independent contractor.  Though Tug Master hired Barge
Builders to convert the Pac Rim to a cargo barge, there is no
evidence in the record before the court that Tug Master
"entrusted" Barge Builders with the "management of the vessel
at the port of supply."  Though Barge Builders agreed to
perform certain work on the Pac Rim, there is no evidence that
Tug Master appointed Barge Builders to act as its "agent"
within the meaning of § 31341.

The record before the court will not support the
conclusion that Barge Builders had the authority required to
procure necessaries for which the Pac Rim could become liable
through imposition of a maritime lien.  In Farwest Steel Corp.
v. Barge Sea-Span, 828 F.2d 522 (9th Cir. 1987), the Ninth

Circuit Court of Appeals considered whether a subcontractor could enforce a maritime lien when it had not been paid for supplies furnished to the general contractor. The <u>Farwest</u> court noted that courts have "uniformly held that the general repair contractor was not endowed with sufficient 'management' authority to support a [statutory maritime] lien" in favor of a subcontractor. <u>Id.</u> at 526. The court added that the only exception to this "rule against the subcontractor lien will occur where the subcontractor has been engaged by a general contractor in circumstances where the general contractor was acting as an agent at the direction of the owner to engage specific subcontractors for repairs." <u>Id.</u> In the absence of evidence that it acted as anything other than an independent contractor, or that the owner of the vessel intended that it be engaged to provide services, a subcontractor cannot establish a right to enforce a maritime lien. <u>See</u> <u>id.</u>

In the present action, there is no evidence in the record that, when it leased facilities from plaintiff WDC, Barge Builders was acting as an agent at Tug Master's direction to obtain services specifically from WDC. However, even if Tug Master had known that Barge Builders was likely, or even almost certain to arrange to carry out the conversion at plaintiff's facility, that knowledge would not constitute Tug Master's direction or requirement that the general contractor use plaintiff's services. In <u>Port of Portland v. The M/V PARALLA</u>, 892 F.2d 825 (9th Cir. 1989), a barge owner

8 - OPINION AND ORDER

met with a prospective general contractor and representatives of the Port of Portland to discuss a number of issues, including the Port's use fee.  The barge owner later selected the general contractor to work on its barge, and the general contractor contracted with the Port for use of its facilities.  After the general contractor failed to pay the Port all it was owed on the project, the Port arrested the barge and attempted to assert a maritime lien for necessaries.  Id. at 827.  The Court of Appeals concluded that the Port could not enforce a lien against the barge because it could not establish that the general contractor was the owner's agent in contracting with the Port, or that the barge owner required the general contractor to use the services of the Port as a subcontractor.  Id. at 828.  The court concluded that, though the Port might be able to show that it "was likely, even perhaps rather certain," that the general contractor would choose to use the Port's facilities, that did not "constitute a direction or requirement to use those services."  Id.

Plaintiff contends that defendant's motion for summary judgment should be denied because evidence in the record supports the conclusion that Barge Builders represented that it owned the Pac Rim.  I disagree.  There is a factual disagreement as to what representations Barge Builders made about the ownership of the Pac Rim.  Poulsen, WDC's facility manager, has submitted a declaration stating that Thompson represented that Barge Builders owned the barge, and Thompson

has submitted a declaration stating that he told Poulsen that
Tug Master owned the barge.  However, this is not a <u>material</u>
issue of fact, because there is no evidence that Tug Master,
Pac Rim's owner, made, participated in, confirmed, or even
knew or should have known of any misrepresentation to
plaintiff about the ownership of the vessel.  Fully accepting
Poulsen's representation that Barge Builders asserted that it
owned the vessel does not alter the uncontroverted fact that
it did not.

     Plaintiff has cited, and I have found, no reported
decisions stating or implying that a misrepresentation made by
one who lacks the authority to obtain necessaries for a vessel
under § 31342 and who is not presumed to have such authority
under § 31341 will support the imposition of a maritime lien.
To the contrary, in <u>Port of Portland</u>, the Court of Appeals
noted that the implied authority required to support
imposition of a maritime lien has usually been found where
representations were made by persons whose authority is
presumed under relevant statutory provisions or where a
vessel's owner or its representative has seriously misled the
subcontractors.  <u>Id.</u> at 829.

     The record before the court here supports only the
conclusion that Barge Builders acted as an independent
contractor when it leased facilities from plaintiff to be used
in the conversion of the Pac Rim.  There is no evidence that
Barge Builders acted as Tug Master's agent or at Tug Master's

10 - OPINION AND ORDER

direction when it leased facilities from plaintiff. To the
contrary, the record supports only the conclusion that Barge
Builders acted as an independent contractor in selecting
plaintiff's facility. The only evidence directly addressing
Barge Builder's selection of plaintiff's facility is
Thompson's declaration that Tug Master never directed him "to
Washington Development or the Tongue Point terminal and never
suggested that Pacific Coast Barge Builders should lease the
Tongue Point terminal or any other particular terminal for the
conversion of PAC RIM EXPRESS."

Under these circumstances, plaintiff cannot establish
that it is entitled to enforce a maritime lien against the Pac
Rim. Accordingly, defendant is entitled to summary judgment.

## CONCLUSION

Defendant's second motion for summary judgment (#50) is
GRANTED.

DATED this 13th day June, 2007.

_____
John Jelderks
U.S. Magistrate Judge

11 - OPINION AND ORDER