IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WASHINGTON DEVELOPMENT        )
COMPANY, INC., a Montana      )
corporation,                  )
                              )
            Plaintiff,        )    Civil No. 06-676-JE
                              )
        v.                    )    OPINION AND ORDER
                              )
M/V PAC RIM EXPRESS, her      )
engines, tackle and equipment, )
and TUG MASTER, INC., a       )
Washington corporation,       )
                              )
            Defendants.       )
_____)


        Michael E. Haglund
        Michael K. Kelley
        Julie A. Weis
        Haglund Kelley Horngren Jones & Wilder LLP
        101 S.W. Main Street, Suite 1800
        Portland, OR 97204-3226

            Attorneys for Plaintiff


1 - OPINION AND ORDER

Charles J. Paternoster
Parsons Farnell & Grein LLP
1030 S.W. Morrison Street
Portland, OR 97205

Terence K. McGee
1000 Second Avenue, Suite 2450
Seattle, WA 98104

    Attorneys for Defendant

JELDERKS, Magistrate Judge:


    Plaintiff Washington Development Company, Inc. (WDC) brings this admiralty action against defendant M/V Pac Rim Express (Pac Rim) to recover lease and custodial expenses allegedly provided as "necessaries" to that vessel.  Following entry of summary judgment in favor of defendant Pac Rim on June 13, 2007, plaintiff filed the pending motion for reconsideration.  For the reasons set out below, the motion is denied.


## FACTUAL BACKGROUND

    Plaintiff WDC, a Montana corporation, owns and operates a marine terminal at Tongue Point on the Columbia River.

    Pacific Coast Barge Builders, Inc. (Barge Builders) was formed on January 31, 2005, to construct, refit, and repair barges.

    Tug Master, a former defendant not named in plaintiff's operative second amended complaint, purchased defendant Pac Rim in the fall of 2004 with the intention of converting

2 - OPINION AND ORDER

it from an oil tank barge to a deck cargo barge. In February 2005, Tug Master and Barge Builders agreed that Barge Builders would do the conversion work on the Pac Rim in space at the Tongue Point marine terminal that Barge Builders leased from plaintiff WDC.

Beginning on February 10, 2005, plaintiff WDC leased portions of the Tongue Point marine terminal to Barge Builders. Dennis Thompson, the president of Barge Builders, was the only representative of Barge Builders involved in the lease negotiations. Jennifer Poulsen, facility manager of WDC's Tongue Point marine terminal, was the only representative of WDC involved in those negotiations. Thompson asserts that he informed Poulsen that Tug Master owned defendant Pac Rim. Poulsen disputes this assertion, and asserts that Thompson represented that Barge Builders owned the Pac Rim.

Tug Master delivered the Pac Rim to Barge Builders at the Tongue Point marine terminal, and Barge Builders began working on the barge there on February 10, 2005. The Pac Rim remained at the Tongue Point marine terminal until May 12, 2006, when the barge was arrested by the United States Marshal pursuant to process issued in this action.

Tug Master did not have any contractual relationship with plaintiff WDC, and did not enter into any lease agreement under which plaintiff agreed to provide services to the Pac Rim.

3 - OPINION AND ORDER

During the final months of the conversion project,
Barge Builders progressively lost its ability to pay the
suppliers and vendors who furnished materials and services
needed in the conversion.  According to the declaration of
Kelly Roth, Tug Master hired Roth's company, Kelly's Welding &
Fabrication LLC, "to act as owner's representative during the
final months of the conversion of the barge by Pacific Coast
Barge Builders."  Roth states that he worked on the Pac Rim
Express from August 20, 2005, until December 18, 2005.  Roth
adds that, "in order to ensure completion of the conversion,
Tug Master began paying some of Pacific Coast Barge Builders'
suppliers and vendors directly" upon his approval of their
invoices to Barge Builders.  He also states that he was never
aware of any representation by plaintiff that it believed that
it had a contractual relationship with Tug Master, or that
plaintiff believed that Tug Master "was in any way responsible
to pay any of Pacific Coast Barge Builders' obligations."

Roth states that, in November and December of 2005, he
asked plaintiff "to segregate amounts Washington Development
attributed to the barge's moorage from amounts it attributed
to the lease of the terminal and to fax the moorage invoices
directly to Tug Master," which then paid the moorage charges
directly to plaintiff.  Roth reiterates that, in conversations
concerning these payments, plaintiff and its representatives
never indicated that they had a contract with Tug Master, or

that Tug Master was responsible to pay for any of Barge
Builder's obligations.

From October through December, 2005, Tug Master directly
paid plaintiff WDC moorage fees for the Pac Rim in the amount
of $3,325 per month and rental fees in the amount of $200 per
month for a fire meter and fire monitor.  According to the
declaration of Fred Dahl, Jr., Tug Master's president, Tug
Master made these payments, for which Barge Builders was
obligated, "in order to ensure uninterrupted completion of the
barge's conversion."  Dahl adds that, after Tug Master made
these payments, plaintiff WDC began invoicing Tug Master
directly for amounts that Barge Builders owed pursuant to the
lease, and refused to credit Tug Master's payments to the Pac
Rim's moorage rather than to the Barge Builders' account.
Dahl states that Tug Master then sought legal advice and
stopped making payments to plaintiff.

Barge Builders worked on the Pac Rim as an independent
contractor.  Barge Builders and Tug Master had no financial
interest in each other, and had no control over each other.
Tug Master did not authorize Barge Builders to procure goods
or services for the Pac Rim's account, and did not authorize
Barge Builders to incur liens on the Pac Rim.

## PROCEDURAL HISTORY

Throughout the course of this litigation, plaintiff has presented evolving theories of its case. The original complaint, filed on May 10, 2006, named the Pac Rim; its owner, Tug Master; and the U.S. Bank as defendants. The complaint alleged that plaintiff was owed $39,335.70 pursuant to a lease agreement between plaintiff and defendant Tug Master. The complaint also alleged that plaintiff was entitled to recover its reasonable attorney fees pursuant to a "lease agreement between plaintiff and defendants M/V PAC RIM EXPRESS and Tug Master, Inc. . . ."

Plaintiff filed a first amended complaint on May 26, 2006. That complaint was identical to the original complaint, except for the omission of U.S. Bank as a defendant.

In an Order signed on October 20, 2006, the court extended the discovery cutoff and deadline for filing dispositive motions to December 15, 2006.

On December 15, 2006, defendant Tug Master filed a motion for summary judgment asserting that plaintiff could not prevail because it had no contractual relationship with plaintiff. On January 17, 2007, while that motion was pending, plaintiff sought leave to file a second amended complaint. The proposed complaint, which named only the Pac Rim Express as a defendant, omitted any allegation that Tug Master had entered into a lease with plaintiff. The proposed complaint instead alleged that Barge Builders had represented

6 - OPINION AND ORDER

that it owned the Pac Rim, and "entered into a lease with plaintiff for the purpose of repairing and renovating the barge."  The proposed complaint alleged that moorage and other space plaintiff provided to the barge "constitute necessaries within the meaning of the Maritime Lien Act, 46 U.S.C. § 31342."

Defendant Tug Master opposed the motion for leave to file a second amended complaint on the grounds that plaintiff had failed to show good cause for amendment after the motion for summary judgment had been filed, that amendment was unfairly prejudicial, that amendment constituted an untimely involuntary dismissal of defendant Tug Master, and that amendment was futile because the claim asserted in the proposed second amended complaint could not withstand summary judgment.  This latter argument was premised on defendant's assertion that the "necessaries" in question were provided pursuant to the representations of Barge Builders, which was not a "person authorized by the owner" to obtain necessaries for a vessel under 42 U.S.C. § 31342.

In an Opinion and Order filed on March 21, 2007, I granted plaintiff's motion for leave to file a second amended complaint, and denied defendant's motion for summary judgment. In the Opinion, I noted that, but for the filing of a second amended complaint, defendant would have been entitled to summary judgment because there was no evidence that defendant Tug Master entered into the lease agreement alleged in the

7 - OPINION AND ORDER

operative first amended complaint.  I concluded that "good
cause" for amendment existed, in part, because the amount in
controversy was very modest, and it appeared that plaintiff
had attempted to minimize litigation expenses.  In denying the
motion for summary judgment, I noted that, though there was no
evidence that defendant Tug Master engaged Barge Builders as
anything other than an independent contractor or intended that
plaintiff supply terminal facilities, the issue of Barge
Builders' authority had not been explored because it was not
relevant until plaintiff filed its second amended complaint.

As noted above, the second amended complaint named only
the Pac Rim Express as a defendant, and alleged that Barge
Builders "represented itself as the owner of the BARGE PAC RIM
EXPRESS and entered into a lease with plaintiff for the
purpose of repairing and renovating the barge."  The second
amended complaint further alleged that plaintiff provided
space "for the purpose of supporting the repair and renovation
of the vessel," pursuant to Barge Builders' representation
that it owned the Pac Rim, and pursuant to the written lease.
This complaint alleged that the moorage and other space
plaintiff provided for the Pac Rim "constitute necessaries
within the meaning of the Maritime Lien Act, 46 U.S.C.
§ 31342."  It added that the reasonable value of "the
necessaries" it provided is $34,665.  Plaintiff also alleged

8 - OPINION AND ORDER

that it is entitled to recover $100 per day in "custodian fees" for a total of 41 days that the Pac Rim was in its custody after it was arrested by the U.S. Marshal.

In an Opinion and Order filed on June 13, 2007, I granted defendant Pac Rim Express' motion for summary judgment.

## DISCUSSION

Plaintiff's second amended complaint alleged that Barge Builders represented itself as the owner of the Pac Rim Express, and that plaintiff provided the barge "necessaries" based upon that representation and upon the written lease agreement.  In its opposition to defendant's motion for summary judgment, plaintiff argued that the Pac Rim was liable for the costs of the moorage and other space it had provided because Barge Builders had represented that it owned the Pac Rim.

I granted defendant Tug Master's motion for summary judgment because the record before the court would not support the conclusion that Barge Builders qualified as a "person" with authority to procure necessaries for the Pac Rim.  In the Opinion granting the motion for summary judgment, I noted that there was no evidence that Tug Master appointed Barge Builders to act as its "agent" within the meaning of § 31341, and concluded that, under relevant decisions from this Circuit, plaintiff could not establish that Barge Builders had the authority required to procure necessaries for which the Pac

Rim could become liable through the imposition of a maritime
lien.  I concluded that, though there was a factual
disagreement as to what representations Barge Builders had
made about the ownership of the Pac Rim, this dispute was not
material because there is no evidence that the Pac Rim's owner
made, participated in, confirmed, or knew or should have known
of any misrepresentation to plaintiff about the ownership of
the vessel.

     In its motion for reconsideration, plaintiff presents a
legal argument that was not expressed or implied in either
it's second amended complaint or in it's opposition to either
of the motions for summary judgment.  Plaintiff now argues,
for the first time, that Roth's presence as Tug Master's agent
at the Tongue Point work site and Roth's request that
plaintiff send moorage invoices to Tug Master raises an issue
of fact as to whether a maritime lien arose through direct
dealings between plaintiff and Tug Master.  It also argues,
for the first time, that there was "no dispute that after
Pacific Coast Barge Builders dropped out of the picture,
plaintiff was a 'person providing necessaries' on the order of
the owner or an authorized agent."  It adds that, because Roth
represented Tug Master after Barge Builders' demise, summary
judgment was inappropriate "from at least November 2005 on."

     In its motion for reconsideration, plaintiff now seeks to
avoid summary judgment by asserting a basis of liability not
alleged in the operative complaint or argued when defendant's

10 - OPINION AND ORDER

first or second motions for summary judgment were pending.
Nothing in plaintiff's complaint or in its response to
defendant's summary judgment arguments would have informed
defendant or the court that plaintiff asserted an entitlement
to lease payments based upon any direct dealings between Tug
Master and plaintiff or upon communications through Roth.
Instead, as plaintiff's legal theories have evolved, plaintiff
first alleged that Tug Master had a direct contractual
relationship with plaintiff that was formalized by a written
lease.  When Tug Master's first motion for summary motion
demonstrated the absence of evidence supporting that
allegation, plaintiff moved to amend its complaint to allege
that the Pac Rim is liable based upon representations made by
Barge Builders and a contract between Barge Builders and
plaintiff.

    Defendant has already filed two motions for summary
judgment, both of which were well-founded based upon the
pleadings in question at the time.  Plaintiff has ultimately
responded to both motions by asserting a legal theory not at
issue when the motion was filed.  It did not assert its most
recent theory of liability until defendant's motion for
summary judgment had been granted.  Plaintiff has had ample
opportunities to refine its legal theories before this point,
and it is not fair to require defendant to bear the expense of
continuing to respond to what are essentially new theories of
liability.

11 - OPINION AND ORDER

Plaintiff now contends that, in reviewing the motion for summary judgment, this court was required to "consider the entire record before it" and "could not limit its review to the pleadings." Reply in Support of Plaintiff's Motion for Reconsideration at 2-3. These assertions demonstrate a misunderstanding of a plaintiff's responsibility to plead the basis upon which it seeks recovery and of the court's responsibility in reviewing a motion for summary judgment. The court's examination of whether material issues of fact exist is framed by the pleadings. In considering whether a defendant is entitled to summary judgment, the court determines whether a material issue of fact exists as to a basis of liability that the plaintiff has actually asserted.

The operative complaint against which defendant most recently sought summary judgment alleged that defendant was liable for necessaries because Barge Builders had represented itself as the Pac Rim's owner and because Barge Builders had entered into a lease with plaintiff. The complaint further alleged that plaintiff provided moorage and other space to the Pac Rim "pursuant to Barge Builders' representation that it owned the Pac Rim, and pursuant to" a written lease that was between Barge Builders and plaintiff. Certainly, the court was required to determine whether the record as a whole could lead the trier of fact to find in plaintiff's favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, that obligation extended to bases

of liability plaintiff had actually pleaded.  Plaintiff has
not cited any authority for the proposition that, in
evaluating a motion for summary judgment, it is the court's
role to determine whether a party might be entitled to relief
on some ground that it has not pleaded.

In evaluating defendant's most recent motion for summary
judgment, the court carefully reviewed plaintiff's complaint,
the evidence submitted by the parties, the parties' arguments
concerning the legal significance of that evidence, and the
relevant statutes and decisions.  A thorough examination of
the evidence before the court did not disclose the existence
of any evidence that would support plaintiff's allegation that
the Pac Rim was liable to plaintiff based upon Barge Builders'
alleged representation that it owned the Pac Rim, or pursuant
to the written lease between Barge Builders and plaintiff.  It
was not the court's duty to determine whether the evidence
might support some theory of recovery which plaintiff had not
asserted.

In reviewing the pending motion for reconsideration, I
have again reviewed the relevant second amended complaint,
which sets out the only basis upon which relief could be
granted which is before the court.  I have reviewed my earlier
decision granting defendant's motion for summary judgment, the
arguments concerning that motion that the parties filed
earlier concerning that motion, and the relevant statutes and
decisions.  Based upon that review, I remain convinced that

13 - OPINION AND ORDER

plaintiff has not shown the existence of evidence from which it could prevail on the allegations set out in its second amended complaint.  Accordingly, the motion for reconsideration is denied.

### CONCLUSION

Plaintiff's motion for reconsideration (#69) is DENIED.

DATED this 20th day of November, 2007.

_____
John Jelderks
U.S. Magistrate Judge

14 - OPINION AND ORDER